UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRYAN DANT,  )
CATHERINE DANT,  )
 )
             Plaintiffs,  )
 )
      vs.  )
 )    1:14-cv-00211-RLY-DML
MIDWEST RENTAL & SUPPLY, INC.,  )
and KENNETH COCHRAN,  )
 )
 )
             Defendants.  )

**ENTRY ON DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SANCTIONS**

Plaintiffs, Bryan and Catherine Dant, were the principal owners of Global Dehumidification Solutions, Inc. ("GDSI"). Plaintiffs entered into agreements with Defendant, Kenneth Cochran, and two of his companies, Equipment Zar, LLC and Defendant, Midwest Rental & Supply, Inc. ("Midwest"). Plaintiffs allege that Defendants converted their property, breached an oral contract, and breached an employment agreement. Defendants move to dismiss Count I (breach of verbal contract), Count III (conversion), Count II's claim for recovery of stock options, and the request for attorney's fees. In addition, Defendants move for sanctions pursuant to Rule 11. For the reasons set forth below, the court **GRANTS in part** and **DENIES in part** the motion to dismiss and for sanctions.

1

## I. Background

The Dants were, at all relevant times until its dissolution, the principal owners of Global Dehumidification Solutions, Inc. ("GDSI"), a company engaged in the business of water disaster recovery. (Complaint ¶¶ 10-11, Filing No. 1, at ECF p. 3). Around April 2010, Plaintiffs, as principals of GDSI, and Defendant Kenneth Cochran began to discuss a merger of GDSI and Defendant Midwest. (*Id.* at ¶ 12, Filing No. 1, at ECF p. 3). Rather than merging, on August 8, 2010, GDSI dissolved. (*Id.* at ¶ 13, Filing No. 1, at ECF p. 3). On September 15, 2010, Plaintiffs entered into the Equipment Purchase Agreement[1] with Cochran's second company, Equipment Zar, LLC ("Equipment Zar"). (*Id.* at ¶ 14, Filing No. 1, at ECF p. 3). Pursuant to the Equipment Purchase Agreement, Equipment Zar agreed to buy all equipment and personal property owned by GDSI and the Dants located at 2620 Leah Drive, Columbia, Tennessee 38401. (Equipment Purchase Agreement, Defendants' Exhibit 1, Filing No. 16-1 at ECF p. 1).

Prior to the execution of the Equipment Purchase Agreement, Plaintiffs entered into a verbal contract with Cochran and Midwest allowing Midwest to use Plaintiffs' equipment and office space in Tennessee to respond to a flood in Nashville, Tennessee. (Complaint ¶ 16, Filing No. 1, at ECF p. 3). Pursuant to that agreement, Plaintiffs were to receive a fair rental rate for all GDSI equipment used by Midwest and a portion of any profits realized by Midwest. (*Id.* at ¶ 17, Filing No. 1, at ECF p. 4). Midwest and

---

[1] Plaintiffs refer to this agreement as the Asset Purchase Agreement in the complaint. Defendants attached a copy of the agreement, which shows that it was titled the Equipment Purchase Agreement. The court will refer to it as the Equipment Purchase Agreement.

Cochran have not paid Plaintiffs in accordance with this agreement. (*Id.* at ¶ 18, Filing No. 1, at ECF p. 4).

In addition to the Equipment Purchase Agreement, Bryan Dant and Midwest entered into an Employment Agreement on September 14, 2010. (*Id.* at ¶ 22, Filing No. 1, at ECF p. 4). As part of this agreement, Dant became responsible for Midwest's marketing activities. (*Id.*, Filing No. 1, at ECF p. 4). In exchange, Dant received a base salary, a signing bonus, and the possibility of stock options and additional benefits. (*Id.* at ¶ 23, Filing No. 1, at ECF p. 5). Dant received his base salary, but did not receive stock options, commissions, or other benefits. (*Id.* at ¶¶ 24-25, Filing No. 1, at ECF p. 5).

## II.  Standard

Defendants bring their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which authorizes the dismissal of claims for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not the merits of the lawsuit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court may grant a Rule 12(b)(6) motion to dismiss only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint sufficient on its face need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555. The court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990).

## III. Discussion

### A. Count I – Breach of Verbal Contract

In Count I, Plaintiffs allege that Midwest breached an oral contract made between Plaintiffs and Midwest regarding the rental of GDSI equipment and office space in May 2010.[2] According to Defendants, this claim must be dismissed pursuant to the parol evidence rule because the Equipment Purchase Agreement, entered into between Equipment Zar and Plaintiffs, governs the understanding. The parol evidence rule applies, according to Defendants, because the Equipment Purchase Agreement encompasses the same subject matter as the prior verbal agreement and it includes an integration clause, incorporating all prior agreements between the parties on the subject matter. Plaintiffs respond that the verbal contract was between Midwest and Plaintiffs, and thus, the parol evidence rule is inapplicable.

The court agrees with Plaintiffs. The prior verbal agreement between Midwest and Plaintiffs is not subject to the parol evidence rule. The verbal contract and written contract, as alleged in the complaint, are between different entities. The fact that Cochran negotiated both contracts is irrelevant to the parol evidence rule when, as here, the court must accept as true that the verbal agreement was with Midwest rather than Equipment Zar. Therefore, the court will not dismiss this claim.

### B. Count II – Breach of Employment Contract

---

[2] Plaintiffs voluntarily dismissed Count I against Defendant Cochran. (Filing No. 13).

In Count II of the Complaint, Plaintiff alleges that Midwest breached the Employment Agreement by failing to pay Dant for commissions, stock options, expense reimbursements and other compensation.[3] Midwest seeks to dismiss only the claim to the stock options. The Employment Agreement states in pertinent part:

> **(a) Restricted Stock Grant.** Subject to the provisions of this Agreement, Employee is hereby granted ten (10) shares of Restricted Stock, and Employee hereby accepts such shares of Restricted Stock. **"Restricted Stock"** shall mean a share of Common Stock granted to Employee pursuant to this Agreement which is subject to the vesting, restrictions, and the other terms set forth in this Agreement.
>
> **(b) Vesting of Restricted Stock.** . . . five (5) shares of Restricted Stock shall vest in full at 12:01 a.m. on September 14, 2012, and five (5) shares shall vest in full at 12:01 a.m. on January 1, 2013; provided, however, that the Restricted Stock shall not vest if on or before the vesting date[,] any lawsuits have been made or are pending or threatened against the Company related to Employee[,] or his business interests[,] or any dealings among Employee[,] his business interests and/or the Company or its affiliates or their shareholders, directors, or employees.

Relying on Paragraph (b), Midwest asserts that Dant is not entitled to the stock options because a lawsuit was filed prior to the vesting dates. In support, Midwest attaches a copy of a complaint filed against Midwest, Dant, and GDSI on November 10, 2010 by Jaydon Equipment, LLC ("Jaydon").

That lawsuit arose out of the flood in Nashville, Tennessee in May 2010. (Defendant's Exhibit 3, [Filing No. 16-3](Filing No. 16-3)). Jaydon and the defendants in that case were hired to restore commercial property after the flood. (*Id.*). Jaydon, the fourth subcontractor, provided equipment to the third contractor pursuant to a contract. (*Id.*). The third subcontractor failed to pay for the rental of such equipment. (*Id.*). Therefore,

---

[3] Plaintiffs voluntarily dismissed Cochran from this claim. ([Filing No. 13](Filing No. 13))

Jaydon filed suit against the owners of the property, the contractor, and all the subcontractors for unjust enrichment. (*Id.*). In the complaint, Midwest is alleged to be the first remote subcontractor, and Dant and GDSI are the second remote subcontractors. (*Id.*).

Plaintiffs argue that the Jaydon lawsuit does not prevent the stocks from vesting because (1) the cited language is vague and ambiguous, and (2) Midwest bears responsibility for the suit. A contract is ambiguous if "a reasonable person could find that it is susceptible to more than one interpretation." *Pepsi-Cola v. Steak 'N Shake, Inc.*, 981 F. Supp. 1149, 1156 (S.D. Ind. 1997) (citing *OEC-Diasonics v. Major*, 622 N.E.2d 1025, 1030 n.2 (Ind. Ct. App. 1993)). Plaintiffs assert that a reasonable interpretation is that the provision "was intended by the parties to only preclude vesting of stock options if Bryan Dant, or a company he otherwise owned or managed, sued or threatened suit against Midwest." (Plaintiffs' Brief at 8, [Filing No. 26, at ECF p. 8](Filing No. 26, at ECF p. 8)). Although the court recognizes that this may be too narrow of a reading, at this stage, the court cannot conclude that the contract includes lawsuits such as the Jaydon lawsuit. The court finds the Jaydon complaint to be unclear regarding the relationship between Midwest and GDSI/Dant. The court can only deduce that the two are co-defendants working on the same project. Nevertheless, the terms "related to" and "dealing among" could be construed to require more of a relationship than co-defendants. Thus, the court could reasonably find that the Jaydon lawsuit did not constitute a "dealing among" the parties, and as such, the claim for stock options survives the present motion.

    **C.    Count III – Conversion**

Plaintiffs also allege that Midwest and Cochran "claim ownership of numerous items of equipment and personal property belonging to Plaintiffs which were not included on Schedule I of the [Equipment] Purchase Agreement and for which Defendants have not remitted payment to Plaintiffs." (Complaint ¶ 20, [Filing No. 1, at ECF p. 4](#)). Defendants assert that Plaintiffs have two fundamental flaws in their conversion claims: (1) they fail to identify the property they allege Defendants converted and (2) they fail to identify when it was converted. Additionally, Defendants ask the court to dismiss this claim for violating the statute of limitations.

The court agrees with Defendants that Plaintiffs' failure to identify the property, which was allegedly converted, is a fatal flaw. *Twombly* requires Plaintiffs to provide more than "labels and conclusions." 550 U.S. at 570. Plaintiffs in effect only cite the legal elements of conversion. Such a recitation is not entitled to the presumption of truth that is afforded factual allegations and "may be disregarded on a motion to dismiss." *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). Thus, the court finds that Plaintiffs failed to state a claim of conversion and dismisses Count III in its entirety.

### D. Request for Attorneys' Fees

Defendants also ask that the court dismiss Plaintiffs' request for attorneys' fees. The parties agree that there is no basis for attorneys' fees to be awarded in this lawsuit; however, they disagree about whether a prayer for relief can be subject to dismissal. The court has found cases both dismissing and striking a request for attorneys' fees. Thus, the court concludes that it is proper to strike the claim for attorneys' fees at this stage.

### E. Motion for Sanctions

Defendants assert that Plaintiffs' claims for stock options and attorneys' fees are frivolous, and thus move for sanctions under Federal Rule of Civil Procedure 11(c).[4] The court disagrees that these claims were frivolous and vexatious. The motion for sanctions is hereby **DENIED**.

## IV. Conclusion

The Defendants' partial motion to dismiss is **GRANTED** as to Count III, and **DENIED** as to Count I and Count II's claim for stock options. (Filing No. 15). Plaintiffs' request for attorneys' fees is also stricken from the complaint. The court also **DENIES** Defendants' Motion for Sanctions. (Filing No. 15).

**SO ORDERED** this 27th day of August 2014.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

---

[4] Pursuant to Local Rule 7-1, Defendants should have filed this motion separately. Nevertheless, in the interest of judicial economy, the court will consider it.